IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | 8:05CR238 |
| ) | |
| vs. ) | REPORT AND |
| ) | RECOMMENDATION |
| VICENTE NUNGARAY-CALDERON, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on the defendant Vicente Nungaray-Calderon's (Nungaray-Calderon) Motion to Suppress (Filing No. 19). The defendant is charged in the Indictment with possession with illegally re-entering the United States, in violation of 8 U.S.C. § 1326(a), after being convicted of an aggravated felony and deported. **See** Filing No. 11. The charge stems from a traffic stop on April 26, 2005, by a trooper from the Nebraska State Patrol (NSP) on Interstate 80 in Omaha, Nebraska.

Nungaray-Calderon seeks to suppress all evidence derived from the illegal seizure of himself during the traffic stop. Nungaray-Calderon contends the traffic stop was conducted without justification and he was unlawfully detained because the stop, ostensibly for an obscured license plate, was pretextual. The Court held an evidentiary hearing for the motion to suppress on August 15, 2005. At the hearing, the Court heard the testimony of NSP Trooper Robby Jackson (Trooper Jackson) and Rosa Delia Nungaray (Mrs. Nungaray). The Court received into evidence one videotape (Exhibit 1) of the traffic stop and five photographs (Exhibits 101-102 and 104-106). The Court took judicial notice of two Nebraska statute sections: Nebraska Revised Statute § 60-311 and 60-324 (TR. 47). A transcript (TR.) was prepared and filed in this matter on August 17, 2005. **See** Filing No. 28. Nungaray-Calderon filed a brief (Filing No. 20). The government filed a brief (Filing No. 24) in opposition to the motion. No post-hearing briefs were filed.

## FINDINGS OF FACT

Trooper Jackson has worked for the NSP for approximately seven years and is currently assigned as a traffic enforcement officer (TR. 5). Prior to his experience with the NSP, Trooper Jackson was a police officer in the United States Air Force for four years (TR. 5). Trooper Jackson received training over the course of his employment regarding the importance of unobstructed license plates and the state statutes regarding license plate legibility (TR. 6-7).

On April 26, 2005, Trooper Jackson was patrolling Kimball County, Nebraska, which includes Interstate 80 and Highways 30 and 71 (TR. 5-6). On that date, there was a light misting rain (TR. 7). At approximately 5:00 p.m., Trooper Jackson was traveling westbound on Interstate 80 in the left lane near Kimball, Nebraska (TR. 7). Trooper Jackson approached a dark colored minivan in the right westbound lane (TR. 7). The van had a cover over the license plate preventing Trooper Jackson from clearly reading the plate and licensing tags (TR. 7). Trooper Jackson described the problem with a license plate cover, for example the cover reduces the license plate's reflective quality and fog or frost over to obscure the number (TR. 24-25). Trooper Jackson was driving a marked patrol vehicle, which has the capability of video recording activated by turning on the emergency overhead lights (TR. 9). A video recording was made in this case (TR. 9, 12-13, Exhibit 1).

When the van pulled to the shoulder of the road and Trooper Jackson got behind the van, he observed the rear license plate from California (TR. 9-10). Trooper Jackson made contact, from the passenger side of the vehicle, with the driver who was later identified as Nungaray-Calderon (TR. 10). Mrs. Nungaray, Nungaray-Calderon's wife, and their son were riding as passengers in the van (TR. 27).

Trooper Jackson testified he did not see the driver of the vehicle before initiating the stop (TR. 8, 12). Further, Trooper Jackson testified the front of the patrol car became even with the rear bumper of the van momentarily before the stop, however the trooper did not drive next to the van (TR. 12). By contrast, Mrs. Nungaray testified the patrol vehicle moved in front of a semi-truck to get behind the van, then moved again into the left lane, overtook the slower

moving van, and the trooper peered into the vehicle at the occupants before getting behind the van a second time to initiate the stop (TR. 28-29, 38).

Trooper Jackson asked for the driver's license to drive and the vehicle registration (TR.19-20). Mrs. Nungaray testified the trooper did not ask for any other paperwork, such as the vehicle registration or insurance records (TR. 30). Mrs. Nungaray stated she offered Trooper Jackson the vehicle's registration, but he told her he "didn't care about that, just [Nungaray-Calderon's] driver's license" (TR. 31). The legal analysis below is not dependant on a credibility determination, however to the extent a credibility determination is needed the Court finds Trroper Jackson more credible than Mrs. Nungaray. This determination is made based upon each of the witnesses' demeanor during the hearing, intelligence, memory, motives, general reasonableness and consistency with other testimony. Specifically, the videotape of the stop more closely corroborate's Trooper Jackson's version of events then Mrs. Nungaray.

The rear license plate had a clear cover over it (TR. 43). Trooper Jackson informed the occupants the reason for the stop and that they would not be issued a citation, but a violation card instructing them to remove the license plate cover on the rear license plate (TR. 10). Nungaray-Calderon produced an Ohio driver's license (TR. 10). Trooper Jackson asked Nungaray-Calderon to sit in the patrol card while he wrote the violation card and ran a records check (TR. 11). Trooper Jackson ran Nungaray-Calderon's name through NCIC by giving the information to the NSP dispatcher (TR. 11). Trooper Jackson learned Nungaray-Calderon had an outstanding warrant for his arrest for being a deported felon (TR. 11). Trooper Jackson and Nungaray-Calderon each spoke with an immigration officer to confirm Nungaray-Calderon's identity (TR. 11). Trooper Jackson placed Nungaray-Calderon under arrest (TR. 11).

After Mrs. Nungaray returned to California with the van, she took several photographs of the van (TR. 33-34; Exhibits 101-102 and 104-106). Mrs. Nungaray testified the license plates remained the same as they were on the night of April 26, 2005 (TR. 33-37).

## LEGAL ANALYSIS

Nungaray-Calderon argues all evidence obtained on April 26, 2005, during the course of the stop of his vehicle should be suppressed. Nungaray-Calderon argues the deputy did not have probable cause to stop the vehicle, but impermissibly conducted a traffic stop for no reason. The evidence obtained on April 26, 2005, was evidence of Nungaray-Calderon identity.

"The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984). However, identity evidence, specifically fingerprints, taken as a fruit of a Fourth Amendment violation should be suppressed. *United States v. Guevara-Martinez*, 262 F.3d 751, 756 (8th Cir. 2001). In *Guevara-Martinez*, the Eighth Circuit determined that since the fingerprints were taken during an illegal detention after the suspect talked to an INS agent, rather than part of routine booking, they should be suppressed. Such is true even though "untainted fingerprints" could be obtained in a civil deportation proceeding at any time. *Id.*; **see also** *United States v. Perez-Perez*, 337 F.3d 990, 994 (8th Cir. 2003); *Rodriguez-Arreola*, 270 F.3d 611, 618-19 (8th Cir. 2001) (prosecution may proceed with untainted evidence of identity). It is unclear from Nungaray-Calderon's motion and argument what specific evidence he seeks to suppress, however the Court will evaluate the merits of the motion as a motion to suppress all evidence related to Nungaray-Calderon's identity.

The Eighth Circuit has "repeatedly held that any traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver." *United States v. Mallari*, 334 F.3d 765, 766 (8th Cir. 2003) (internal quotation and citations omitted). "To determine whether a traffic stop was based on probable cause or was merely pretextual, an 'objective reasonableness' standard is applied." *United States v. Jones*, 275 F.3d 673, 680 (8th Cir. 2001). An officer has an objectively reasonable basis for stopping a motorist where the officer has a reasonable basis for believing that the driver has breached a traffic law. *Mallari*, 334 F.3d at 766 (**citing** *United States v. Thomas*, 93 F.3d 479, 485 (8th Cir. 1996)

and ***United States v. Sanders***, 196 F.3d 910, 913 (8th Cir. 1999) (officer's mistaken, but objectively reasonable belief that a traffic violation occurred supported traffic stop)).

The Court finds Trooper Jackson had an objectively reasonable basis for believing the van was in breach of a traffic law. The trooper could not clearly read the van's license plate until pulling directly behind and getting close enough to the van during the stop. Nebraska Revised Statutes § 60-324 requires all identification marks on licenses plates be kept free from "blurring matter" so that they are plainly visible at all times. **See *Mallari***, 334 F.3d at 766 (violation of statute where license plate unlit). Trooper Jackson explained how even a clear cover over the license plate may obscure the identification marks. In this case the trooper was unable to clearly read the license plate during a light rain in the evening hours, until he was very close and directly behind the vehicle. Based on the officer's observations, Trooper Jackson had probable cause to stop the driver of the van. There was no evidence presented that Trooper Jackson stopped the van based on any unlawful motive.

Contemporaneous with a valid traffic stop, a police officer may detain the motorist while completing a number of routine tasks such as computerized checks of the vehicle registration, driver's license and criminal history, and the issuing of a citation. ***$404,905.00,*** 182 F.3d 643, 647 (8th Cir. 1999); **see also *United States v. Sokolow***, 490 U.S. 1, 7 (1989). Additionally, the police officer may inquire about the motorist's destination, purpose of the trip and whether the police officer may search the vehicle. ***$404,905.00,*** 182 F.3d at 647; ***United States v. Allegree,*** 175 F.3d 648, 650 (8th Cir. 1999). The police officer may take further action as necessitated by the information volunteered by the motorist. ***$404,905.00,*** 182 F.3d at 647; ***Allegree,*** 175 F.3d at 650-51.

The Court finds, based on the circumstances of this case, the officer had legal justification to first stop and then briefly detain the occupants of the van while the officer conducted a brief investigation and wrote the violation. Because the officer had probable cause to stop the vehicle justification for the brief detention of the van's occupants until Nungaray-Calderon's arrest on the outstanding warrant, the period of detention was not excessive. ***Gregory***, 302 F.3d at 810 (holding twenty minutes not excessive). Trooper Jackson had not yet given Nungaray-Calderon the traffic violation when the trooper learned

of Nungaray-Calderon's arrest warrant. Therefore, the motion to suppress should be denied. Upon consideration,

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:**

Vicente Nungaray-Calderon's Motion to Suppress (Filing No. 19) be denied.

**ADMONITION**

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 18th day of October, 2005.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge